TOMLINSON, APPELLEE, *v.* SKOLNIK; BUCKEYE UNION INSURANCE COMPANY, APPELLANT.

[Cite as Tomlinson *v.* Skolnik (1989), 44 Ohio St. 3d 11.]

(Nos. 88-388 and 88-543—Submitted April 5, 1989—Decided June 28, 1989.)

*Thornburg & Bean* and *Charles H. Bean,* for appellee.

*Sommer, Solovan & Piergallini Co., L.P.A.,* and *Keith A. Sommer,* for appellant.

*Hamilton, Kramer, Myers & Cheek, James R. Gallagher* and *Emerson Cheek III,* urging reversal for *amicus curiae,* State Farm Mutual Automobile Insurance Company.

HOLMES, J. The central issue in this case is whether a claim for loss of services and consortium constitutes a separate claim for "bodily injury" within the liability coverage provided in Buckeye Union's policy. For the reasons which follow, we hold that loss of consortium is not a separate "bodily injury" and thus reverse the court of appeals.

As we construe the policy language at issue here, we do so utilizing the long-standing rules of construction and interpretation applicable to contracts generally. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St. 2d 166, 167, 24 O.O. 3d 274, 275, 436 N.E. 2d 1347, 1348. The most important of these rules is one of abstention: "When the language of an insurance policy has a plain and ordinary meaning, it is unnecessary and impermissible for this court to resort to construction of that language. *Travelers Indemnity Co. v. Reddick* (1974), 37 Ohio St. 2d 119, 121 [66 O.O. 2d 259]." *Karabin v. State Automobile Mut. Ins. Co.* (1984), 10 Ohio St. 3d 163, 166-167, 10 OBR 497, 499-500, 462 N.E. 2d 403, 406. See *Gomolka, supra,* at 168, 24 O.O. 3d at 276, 436 N.E. 2d at 1348 (court may not enlarge contract of insurance where provisions "are clear and unambiguous"). Thus, in reviewing an insurance policy, words and phrases used therein "must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined. * * * The insurer, having prepared the policy, must also be prepared to accept any reasonable interpretation, consistent with the foregoing, in favor of the insured. * * *" *Gomolka, supra,* at 167-168, 24 O.O. 3d at 275-276, 436 N.E. 2d at 1348; *Dealers Dairy Products Co. v. Royal Ins. Co. Ltd.* (1960), 170 Ohio St. 336, 10 O.O. 2d 424, 164 N.E. 2d 745; *New Amsterdam Cas. Co. v. Johnson* (1914), 91 Ohio St. 155, 157-158, 110 N.E. 475.

The declarations page of Skolnik's policy with Buckeye Union provides, as

mentioned above, liability coverage for "BODILY INJURY" in the amount of $25,000 "[e]ach [p]erson," and $50,000 "[e]ach [a]ccident." The pertinent policy language relevant to such coverage provides as follows:

"AGREEMENT In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

"* * *

"PART A

"LIABILITY COVERAGE *We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident.* We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

" 'Covered person' as used in this Part means:

"1. You or any family member for the ownership, maintenance or use of any auto or trailer.

"* * *

"LIMIT OF LIABILITY *The limit of liability shown in the Declarations for 'each person' for Bodily Liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident.* Subject to this limit for 'each person', the limit of liability shown in the Declarations or in this endorsement for 'each accident' for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. The limit of liability shown in the Declarations or in this endorsement for 'each accident' for property damage liability is our maximum limit of liability for all damages to all property resulting from any one auto accident.

"This is the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown in the declarations, or vehicles involved in the auto accident. * * *" (Emphasis added.)

It is at first obvious that "Part A, Liability Coverage" provides a broad, general statement as to Buckeye Union's liability coverage for damages for bodily injury or property damage, *i.e.,* that Buckeye Union will pay such damages "for which any covered person becomes legally responsible because of an auto accident." This broad assurance is unambiguously tempered, however, by the conspicuously labeled section entitled "Limit of Liability," and the limitations for "each person" and "each accident" provided therein. "One may not regard only the right hand which giveth, if the left hand also taketh away. The intention of the parties must be derived instead from the instrument as a whole, and not from detached or isolated parts thereof." *Gomolka, supra,* at 172, 24 O.O. 3d at 278-279, 436 N.E. 2d at 1351, and cases cited therein.

The plain and ordinary language of this policy is subject to but one reasonable interpretation, consistent with the natural and commonly accepted meaning of the words and phrases within the "Limit of Liability" section. Resort to "construction" of the various terms is thus unnecessary. Although many semantic hairs have been split by the parties and lower courts regarding this language, appellee Tomlinson does not have a *separate* claim for an amount over and above the amount paid to her husband under this policy quite simply because any damage she suffered was not a separate "bodily injury sustained by [her] * * * *in* any one auto accident." (Emphasis added.)

The issue as framed by the court of appeals below was whether a claim for loss of consortium can be concluded to

be a separate "bodily injury" under the policy. The court concluded that it may. This was error. The term "bodily injury" is not specifically defined within Buckeye Union's policy, and thus must be given its commonly accepted meaning. *New Amsterdam Cas. Co., supra.* "The words 'bodily injury' are commonly and ordinarily used to designate an injury caused by external violence * * *." *Burns* v. *Employers' Liability Assurance Corp. Ltd.* (1938), 134 Ohio St. 222, 233, 12 O.O. 18, 23, 16 N.E. 2d 316, 321. In contrast, an action for loss of consortium involves, not an injury to the complainant's body, but rather an injury to the complainant's relationship with his or her spouse:

"The 'gist' of the wife's action for loss of the consortium of her husband against a defendant who either intentionally or negligently causes injury to her husband is the direct hurt which she has suffered by reason of the loss of her husband's society, services, sexual relations and conjugal affection which ·includes companionship, comfort, love and solace." *Clouston* v. *Remlinger Oldsmobile Cadillac, Inc.* (1970), 22 Ohio St. 2d 65, 72, 51 O.O. 2d 96, 100, 258 N.E. 2d 230, 234.

Although "the wife of a husband who has been incapacitated suffers great pain and endures constant anguish," *Clouston, supra,* at 73, 51 O.O. 2d at 101, 258 N.E. 2d at 235, such physical manifestations do not render a claim for loss of consortium a "bodily injury" as that term is commonly understood.

Moreover, the legislature has recognized this common distinction between "bodily injury" and "loss of consortium" by its enactment of separate statutes of limitation for each: R.C. 2305.10, applicable to actions for bodily injury; and R.C. 2305.09, applicable to injuries to the rights of a plaintiff not arising upon contract.[3]

"The action of a spouse for loss of consortium and medical expenses *arising from bodily injuries suffered by the other spouse* as a result of the tort of a third party is an action for an injury to the rights of the former spouse not arising upon contract, the commencement of which is governed by the four-year statute of limitation (R.C. 2305.09). (*Corpman* v. *Boyer,* 171 Ohio St. 233, approved and followed.)" (Emphasis added.) *Dean* v. *Angelas* (1970), 24 Ohio St. 2d 99, 53 O.O. 2d 282, 264 N.E. 2d 911, paragraph one of the syllabus. See, also, *Hershberger* v. *Akron City Hosp.* (1987), 34 Ohio St. 3d 1, 6, 516 N.E. 2d 204, 208, and cases cited therein; *Kraut* v. *Cleveland Ry. Co.* (1936), 132 Ohio St. 125, 7 O.O. 226, 5 N.E. 2d 324.

A claim for loss of consortium is a derivative action, *deriving from* a spouse's claim for bodily injury. See *Clouston, supra.* "A derivative action clearly stems from a single accident or occurrence. Indeed, the derivative actions would not exist but for the primary action." *Dues* v. *Hodge* (1988), 36

---

[3] R.C. 2305.09 provides, in pertinent part:

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

"* * *

"(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code."

R.C. 2305.10 provides, in pertinent part:

"An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose."

Ohio St. 3d 46, 48, 521 N.E. 2d 789, 792. It was on this basis that the court in *Dues,* concerning a derivative action for negligent infliction of serious emotional distress, held that "[a]n insurance policy provision that limits recovery for all causes of action arising out of bodily injury to one person to a single limit of liability is a valid restriction of uninsured motorist coverage." *Id.* at paragraph two of the syllabus. The fact that the limitation in *Dues* involved a restriction of uninsured motorist coverage, while the instant case involves a restriction of liability coverage, is a distinction without a legal difference. See *Shearer* v. *Motorists Mut. Ins. Co.* (1978), 53 Ohio St. 2d 1, 7, 7 O.O. 3d 1, 4, 371 N.E. 2d 210, 213. Thus, we hold that an insurance policy provision that limits recovery for all causes of action arising out of or because of bodily injury to one person to a single limit of liability is a valid restriction of automobile liability insurance coverage.

Appellee raises an additional distinction between the policy language involved in *Dues* and that of the instant case. The State Farm policy at issue in *Dues* limited liability coverage as follows:

"Under 'Each Person' is the amount of coverage for all damages due to *bodily injury* to one *person.* Under 'Each Accident' is the total amount of coverage for all damages due to *bodily injury* to two or more *persons* in the same accident." (Emphasis *sic.*)

Appellee argues that "due to," as used in the State Farm policy and interpreted by this court as meaning "arising out of," differs from the language used in Buckeye Union's policy. Specifically, appellee argues that "resulting from," as used in the "each accident" provision of Buckeye Union's policy is broader than "for"

and thus Buckeye Union recognizes loss of consortium claims under its "each accident" provision. We find appellee's arguments misleading, and are unpersuaded.

According the words used in each policy their commonly accepted meanings, we hold that, when read in context, "due to," "for" and "resulting from" are all used as synonyms for "because of" or "arising out of." Webster's Third New International Dictionary, Unabridged (1986) 699, defines "due to" as *"prep:* because of," and provides a cross-reference to "due * * * 5: owing or attributable: ASCRIBABLE—used with *to.*" Similarly, "for" is defined as *"prep * * * 8a:* because of * * *: on account of * * *." *Id.* at 886. Finally, "result," when used as an intransitive verb, is defined as "1: to proceed, spring, or *arise as a consequence,* effect, or conclusion * * *." (Emphasis added.) *Id.* at 1937. Both the Buckeye Union policy and that at issue in *Dues* validly limit recovery for all damages "because of" or "arising out of" bodily injury to one person to a single limit of liability. *Dues, supra,* paragraph two of the syllabus. Thus, since both Ronald Tomlinson's personal injuries and appellee's loss of consortium arose out of or because of bodily injury to Ronald Tomlinson, a single $25,000 limit of liability applies to each.

Furthermore, the "each accident" language of the Buckeye Union policy is expressly made "[s]ubject to * * * [the] limit for 'each person,' " and thus cannot provide broader coverage than such "each person" limit.

For all the foregoing reasons, and absent a definitional provision in the insurance policy to the contrary, a claim for loss of consortium, deriving from bodily injury sustained by a spouse, is not a separate bodily injury for purposes of the single person limit

of liability of an automobile liability insurance policy.

Finally, even if appellee's loss of consortium claim were considered a separate bodily injury, which we today hold it is not, it is apparent that the policy language would further preclude a separate per-person recovery because her "bodily injury" was not "sustained * * * in any one auto accident" (emphasis added) as required by the policy.[4] Accord Cincinnati Ins. Co. v. Phillips (Dec. 31, 1987), Preble App. No. CA87-05-011, unreported. Mrs. Tomlinson was not present at the scene of the accident, and thus obviously suffered no damages for bodily injury in such accident.

The judgment of the court of appeals is reversed, and the judgment of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J., WRIGHT and DOAN, JJ., concur.

SWEENEY, DOUGLAS and H. BROWN, JJ., dissent.

RUPERT A. DOAN, J., of the First Appellate District, sitting for RESNICK, J.

H. BROWN, J., dissenting. The central issue in this case is *not*, as the majority claims, one of whether loss of services and consortium constitutes a separate claim for "bodily injury" within the liability coverage provided in Buckeye Union's policy. Rather, our decision should turn on whether the limit of liability, as written in the policy, restricts the total recovery to $25,000.

The overall limit of coverage for the policy in question is $50,000. The parties agree that bodily injury to the plaintiff Ronald Tomlinson resulting from an auto accident was, or exceeded, $25,000. It is undisputed that Nancy Tomlinson's separate cause of action for loss of consortium was worth at least $25,000. Nancy was not injured in the accident. Therefore, our decision is solely one of determining whether the insurance company, in its limit-of-liability section, is entitled to limit the combined recovery for these two claims to $25,000.

The applicable policy language in the Buckeye Union policy is:

"The limit of liability shown in the Declarations for 'each person' for Bodily Liability *is our maximum limit of liability for all damages for bodily injury* sustained by any one person in any one auto accident." (Emphasis added.)

These words should be given their plain meaning. The limit applies to "damages for bodily injury." The majority properly concludes that a claim for loss of consortium is not a claim for bodily injury. Since the majority finds that the loss of consortium is not a bodily injury, there is *no* basis to apply the limit to the claim of Nancy Tomlinson. Accordingly, the overall limit of $50,000 should apply to the combined claims of Nancy and Ronald.[5]

What the majority has done is to apply a limitation on payments "for bodily injury" to prevent payment on a claim which is not a claim for bodily injury. The majority, in its syllabus and

---

[4] Webster's Third New International Dictionary, Unabridged (1986) 1139, defines the preposition "in" as: "1b * * * (4): in the course of * * * [(in) cooling this material hardens] [drowned (in) crossing the river] * * *; 2a * * * (2): during the course of: DURING * * *."

[5] The bodily injury claim of Ronald should be properly limited to $25,000, the amount he received.

in its opinion, attempts to avoid the application of the policy language as it is written. The majority uses the words "arising out of or because of bodily injury" as if those words were contained in the policy. *They are not.* The majority has thus converted a limitation which is plainly written to apply only to bodily injury (which loss of consortium is not) into a limitation applying to claims arising out of bodily injury.

To resolve this case against the party who drafted the policy language, there is no need to resort to "strict construction" against the insurance company (even though the strict-construction doctrine is firmly established in the law of this state). All that is required is the ability to distinguish a claim for bodily injury from a claim arising out of or derivative to a bodily injury.

This court should not judicially rewrite the language of insurance policies to protect the insurer. To do so violates deeply ingrained principles of contract and insurance law. *King* v. *Nationwide Ins. Co.* (1988), 35 Ohio St. 3d 208, 519 N.E. 2d 1380, syllabus; *Faruque* v. *Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St. 3d 34, 31 OBR 83, 508 N.E. 2d 949, syllabus; *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95, 68 O.O. 2d 56, 313 N.E. 2d 844, syllabus; *Smith* v. *Eliza Jennings Home* (1964), 176 Ohio St. 351, 355, 27 O.O. 2d 305, 308, 199 N.E. 2d 733, 736.

SWEENEY and DOUGLAS, JJ., concur in the foregoing dissenting opinion.