OPINION
{¶ 1} Plaintiff-appellant, Mary Elaine Riggs, appeals from a judgment of the Franklin County Court of Common Pleas, which granted summary judgment in favor of defendant-appellee, Motorists Mutual Insurance Company ("Motorists"), in this underinsured motorist declaratory judgment action.
 {¶ 2} In August 1999, Eli Madison failed to yield the right-of-way while turning left in front of appellant's car, causing a collision. As a result of the accident, appellant suffered injuries requiring extensive medical care, and experienced lost wages. She alleges damages in excess of $33,000.
 {¶ 3} The limit of liability coverage of Madison's automobile insurance policy was $25,000, which amount was paid in settlement to appellant. Appellant, who was at that time employed by Cross Country Inn, sought to recover under her employer's insurance policy with Motorists based upon application of Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660. The Motorists policy provides uninsured/underinsured motorist ("UM/UIM") coverage up to $1 million. When Motorists denied her claim, she filed this declaratory judgment action, later amending it to include a bad faith claim against Motorists for denying coverage.
 {¶ 4} In Scott-Pontzer, the court interpreted a commercial insurance contract to extend coverage under its UM/UIM clause to an employee of the company, even when the vehicle involved in the accident was not a company-owned vehicle and even when the employee was not in the scope of his employment at the time of the accident. Central to the reasoning of the case was the policy's use of the word "you" in the section describing who is an insured. The policy defined "insured" for the purposes of underinsured motorist coverage as: "1. You. 2. If you are an individual, any family member. 3. Anyone else occupying a covered auto or a temporary substitute for a covered auto." The court held that, because a company is not a person, the "you" must refer to the individual employees of the company. Id. at 664. The court further held that language in the policy restricting coverage to employees acting within the scope of their employment related only to liability coverage and not underinsured motorist coverage. Id. at 666.
 {¶ 5} In its July 2002 order granting Motorists' motion for summary judgment, the trial court distinguished these facts from those in Scott-Pontzer, by concluding that, although appellant qualified as an "insured" under the policy, the vehicle she was driving was not a "covered auto" as that term was defined. The court found that Motorists had limited its coverage to the 58 vehicles specifically named on its declarations page. Thus, appellant would only have been entitled to recover if she had been driving one of the named vehicles, and, since she had been driving her own vehicle, Motorists was entitled to judgment as a matter of law.
 {¶ 6} Appellant now assigns the following as error:
 {¶ 7} "1. The Trial Court erred to the substantial prejudice of Plaintiff-Appellant Mary Elaine Riggs in ruling that Plaintiff-Appellant was not entitled to underinsured motorist coverage and in entering summary judgment for Defendant-Appellee Motorists Mutual Insurance Company.
 {¶ 8} "2. The Trial Court erred to the substantial prejudice of Plaintiff-Appellant Mary Elaine Riggs in dismissing Plaintiff-Appellant's related, but independent, insurance bad faith claim where the bad faith claim was not even before the Court, on motion for summary judgment, or otherwise."
 {¶ 9} Appellant's first assignment of error contends that no valid waiver of UM/UIM limits occurred, so that UM/UIM protection up to the limits of the liability coverage is implied by operation of law pursuant to former R.C. 3937.18.
 {¶ 10} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 11} When a motion for summary judgment has been supported by proper evidence, a non-moving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine triable issue. Civ.R. 56(E); Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52. To establish the existence of a genuine issue of material fact, the non-moving party must do more than simply resist the allegations in the motion. Rather, that party must affirmatively set forth facts which entitle him to relief. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 111. If the non-moving party "does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).
 {¶ 12} "[I]nsurance contracts must be construed in accordance with the same rules as other written contracts." Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657, 665. Words and phrases used in insurance policies "`must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined.'" Tomlinson v. Skolnik (1989), 44 Ohio St.3d 11, 12 (quoting Gomolka v. State Auto. Mut. Ins. Co. [1982], 70 Ohio St.2d 166,167-168). Ambiguities in insurance policies should be construed liberally in favor of coverage. Yeager v. Pacific Mut. Life Ins. Co. (1956),166 Ohio St. 71, paragraph one of the syllabus.
 {¶ 13} The policy in question, like that in Scott-Pontzer, uses the word "you" to describe who is an insured. It states as follows:
 {¶ 14} "B. WHO IS AN INSURED
 {¶ 15} "1. You.
 {¶ 16} "2. If you are an individual, any `family member.'
 {¶ 17} "3. Your employees while occupying a covered `auto' * * *."
 {¶ 18} According to Motorists, this language was sufficient to signify its intent to limit coverage only to employees who are injured while occupying a covered auto, and the only vehicles qualifying as covered autos were those specifically listed on the declarations page. That page states:
 {¶ 19} "Business Auto Coverage Form Declarations Page
 {¶ 20} "ITEM ONE — Named Insured
 {¶ 21} "CROSS COUNTRY INN
 {¶ 22} "ITEM TWO — Schedule of Coverages and Covered Autos
 {¶ 23} "Each of the following coverages will apply only to those `autos' shown as covered `autos.' Covered `autos' are designated for a particular coverage by the entry of one or more Covered Auto Symbols described in Section I of the Business Auto Coverage Form, CA 0001.
 {¶ 24} "Coverages Covered Auto Symbols Limit of Liability
 {¶ 25} "LIABILITY 1 $1,000,000 PER
 ACCIDENT {¶ 26} "* * *
 {¶ 27} "UNINSURED MOTORISTS/OH 2 $1,000,000 PER
UNDERINSURED MOTORISTS ACCIDENT
 {¶ 28} "* * *
 {¶ 29} "ITEM THREE — Schedule of Covered Autos You Own
 {¶ 30} "See Schedule of Covered Autos Form CA 7002."
 {¶ 31} The policy also contains a page entitled "SPECIAL ENDORSEMENT" which states:
 {¶ 32} "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
 {¶ 33} "WHO IS AN INSURED AMENDED
 {¶ 34} "* * *
 {¶ 35} "BUSINESS AUTO COVERAGE FORM
 {¶ 36} "Under SECTION II — LIABILITY COVERAGE A. COVERAGE, Item 1 is amended to read:
 {¶ 37} "1. Who is an Insured
 {¶ 38} "The following are insureds:
 {¶ 39} "a. You for any covered auto * * *[.]"
 {¶ 40} Finally, under the heading "BUSINESS AUTO COVERAGE FORM," the policy states:
 {¶ 41} "A. DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS
 {¶ 42} "SYMBOL DESCRIPTION
 {¶ 43} "1 = ANY `AUTO.'
 {¶ 44} "2 = OWNED `AUTOS' ONLY. Only those `autos' you own * * *."
 {¶ 45} Appellant first alleges that Motorists failed to meet its burden to show a valid waiver of UM/UIM coverage in an amount equal to liability coverage as required by former R.C. 3937.18. According to appellant, because the declarations page indicates that liability coverage of $1 million per accident is available for "any auto," while UM/UIM coverage of $1 million per accident is available for "owned autos only," the limits of coverage are not the same.
 {¶ 46} At all times relevant to this appeal, R.C. 3937.18 required insurers to offer UM/UIM coverage in an amount equal to the auto liability coverage, unless a valid waiver has been made. In Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565, an employee driving a company car was involved in an accident with an uninsured motorist. The employer had two policies of automobile insurance, but claimed to have expressly rejected uninsured motorist coverage in both policies. Following prior case law holding that the insurer bears the burden of showing the employer's rejection of UM coverage was made expressly and knowingly, the court imposed the additional requirement that such rejections be made in writing. In Linko v. Indemn. Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445, the court expanded the holding of Gyori by further requiring that a valid rejection contain a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits. Id. at 449.
 {¶ 47} In Edstrom v. Universal Underwriters Ins. Co., Franklin App. No. 01AP-1009, 2002-Ohio-3334, the employer had not sought to eliminate UM/UIM coverage, but, rather, to provide differing amounts of UM/UIM coverage depending upon the status of the employee. Upon an employee's allegation that she was entitled to coverage in an amount equal to the liability limits of the policy because a valid offer and rejection had not occurred, the insurer failed to present written proof that it had satisfied the Linko requirements for a valid rejection. We held that the absence of premium information resulted in UIM coverage arising by operation of law in an amount equal to the policy liability coverage.
 {¶ 48} In the case at bar, the intent of Motorists and Cross Country Inn, as suggested by the language of the policy, was not elimination of UM/UIM coverage, nor reduction in coverage amounts depending upon the claimant's status. Instead, the intent was to limit the class of vehicles to which UM/UIM coverage would apply. The trial court found "there is no question that UM/UIM coverage was offered and accepted," seeming to read Gyori and Linko as only applying to a case in which it is alleged that no UM/UIM coverage is provided at all. However, Edstrom makes clear that, where UM/UIM coverage is accepted in less than the full amount provided by the limits of liability section of the policy, the written requirements of Linko must still be satisfied. Here, the policy's application of UM/UIM coverage to "owned autos only" is not equal to the "any auto" coverage for liability purposes and, therefore, all the elements of a valid waiver under Linko must have been demonstrated. Once appellant alleged this in her summary judgment motion, Motorists had the burden of producing evidence of a valid waiver. Motorists failed to do so, and the trial court should not have ruled in Motorists' favor.
 {¶ 49} We hold that, where the parties to a commercial automobile insurance policy seek to limit UM/UIM coverage to owned autos only, and where former R.C. 3937.18 as interpreted in Linko is applicable to the facts of the case, on a motion for summary judgment the insurer must produce a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits in order to demonstrate a valid offer and rejection of UM/UIM limits equal to the limits of liability named in the policy. If the insurer fails to so demonstrate, UM/UIM coverage arises by operation of law.
 {¶ 50} Because this holding effectively determines the case, we need not address appellant's additional arguments: that the policy is ambiguous as to whether UIM coverage is restricted to insureds in "covered autos," and that her vehicle was a "covered auto" as defined in a section of the policy defining covered autos as "autos you own." An "other-owned auto" exclusion cannot be applied to preclude the general UM/UIM coverage which arises by operation of law. Carmona v. Blankenship, Franklin App. No. 02AP-14, 2002-Ohio-5003. Appellant's first assignment of error is sustained.
 {¶ 51} Appellant's second assignment of error finds fault with the trial court's dismissal of her bad faith claim despite the fact that Motorists had not moved to dismiss that claim. Although the trial court did not specifically mention the bad faith claim, it did state "all claims against Motorists are Dismissed with prejudice." (Emphasis sic.) Given the court's conclusion that Motorists was entitled to prevail because appellant was not driving a covered auto at the time of the accident, it was reasonable for the court to also determine that appellant's bad faith claim would not survive. Thus, the dismissal of the bad faith claim at that time was not erroneous, and we overrule appellant's second assignment of error. However, in so deciding we do not reach the merits of her bad faith claim, and the decision rendered herein resurrects appellant's bad faith claim for determination by the trial court on remand.
 {¶ 52} Appellant's first assignment of error is sustained, her second assignment of error is overruled, and the decision of the Franklin County Court of Common Pleas is reversed in part, affirmed in part, and remanded for further proceedings consistent with the opinion rendered herein.
Judgment reversed in part, affirmed in part and cause remanded.
BRYANT and TYACK, JJ., concur.